FRATERNAL ORDER OF POLICE LABOR COUNCIL v TOWNSHIP OF FLINT

Docket No. 77169. Decided July 22, 1986. On application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave, vacated the judgments of the Court of Appeals and the circuit court and remanded the case to the circuit court for further proceedings.

The Fraternal Order of Police Labor Council, Ralph Roland, John Crocker, and Eugene DeBuc, provisional police officers who had not taken required civil service examinations at the time they were hired by Flint Township, brought an action in the Genesee Circuit Court against the township, seeking to compel the township to recall the officers, following their layoffs for budgetary reasons, prior to filling permanent officer positions on the basis of civil service examination scores of eligible applicants. The township maintained that it was bound by 1935 PA 78 to resort to the eligibility list in filling vacant positions. The plaintiffs asserted that, because of their service, they had become policemen under the act and were entitled to reinstatement. The court, Judith A. Fullerton, J., held that the plaintiffs were entitled to reinstatement. The Court of Appeals, M. J. KELLY, P.J., and BEASLEY and STEMPIEN, JJ., affirmed in an unpublished opinion per curiam (Docket No. 74305). The defendant applies for leave to appeal.

In an opinion per curiam, signed by Chief Justice WILLIAMS and Justices BRICKLEY, CAVANAGH, BOYLE, and RILEY, the Supreme Court *held:*

The plaintiffs, as temporary employees of the township, were not entitled to any of the protections afforded by 1935 PA 78, including its reinstatement provisions. Under the act, all vacancies must be filled in accordance with civil service procedures. The record indicates that the plaintiffs clearly recognized their temporary status. It would subvert the intent and purpose of the act to ignore its mandatory testing and appointment provisions.

Reversed and remanded.

Justice LEVIN would grant leave to appeal.

Justice ARCHER, dissenting, agreed with the analyses and results of the trial court and the Court of Appeals.

*John A. Lyons* for the plaintiffs.

*Neithercut, Klapp, Shegos & Dillard* (by *James C. Dillard*) for the defendant.

PER CURIAM. Plaintiffs Roland, Crocker, and De Buc were hired by the defendant township as full-time, but "provisional," police officers because they had not yet taken a required civil service examination. They were laid off sixteen months later because of budgetary difficulties, but subsequently passed the required test. We are asked to decide whether the plaintiffs must be reinstated before the township can fill permanent, full-time positions by appointing persons from a civil service approved list who scored higher on the required test than the plaintiffs.

I

The plaintiffs initially were hired at various points from 1977 to 1979 to fill part-time positions with the Flint Township Police Department.[1] In late August 1979, the township board authorized four full-time positions within the department.

The township had elected some twenty years earlier to create a civil service commission pursuant to 1935 PA 78, MCL 38.501 *et seq.;* MSA 5.3351 *et seq.* Thus, all appointments were to be made pursuant to an eligibility list compiled after competitive examination.

The board directed that such an examination be scheduled in order to fill the newly created positions. Meantime, the board authorized that officers be appointed to fill the vacancies on a temporary basis. Subsection 11(c) of Act 78 allows a govern-

---

[1] Plaintiff Ralph Roland initially was hired in October 1977 on a part-time basis. His position was changed to full-time work in October 1978, but he again was put on part-time status in April 1979.

mental unit to appoint police officers for up to three months even though those appointed have not taken a competitive examination, providing there are "urgent reasons" for doing so and there is no list of eligible civil service candidates. MCL 38.511(c); MSA 5.3361(c).[2]

The plaintiffs were appointed in August 1979 on the recommendation of the police chief. A competitive examination subsequently was scheduled for January 1980. Due to residency questions not at issue in the present case, the plaintiffs were not allowed to sit for the examination. However, subsequent to a federal district court ruling, the plaintiffs eventually did write the examination in April 1980.

The written exercise was but one part of the civil service examination. The other was an oral test. The township did not administer this portion until March 1981.[3] The plaintiffs were among six

---

[2] MCL 38.511(c); MSA 5.3361(c) provides:

(c) Whenever there are urgent reasons for filling a vacancy in any position in the fire or police department and there is no list of persons eligible for appointment the appointing officer may nominate a person to the civil service commission for a noncompetitive examination; and if such nominee shall be certified by the said commission as qualifed [sic], after such noncompetitive examination, he may be appointed temporarily, to fill such vacancy until a selection and appointment can be made after a competitive examination, and in the manner prescribed in this act; but such temporary appointment shall not continue for a longer period than 3 months, nor shall successive temporary appointments be made to the same position, under this provision. In the event of an emergency due to a war in which our country is involved, the civil service commission may make temporary appointments to fill vacancies, when appointments cannot be made under the provisions of this act, such appointments to be temporary, and only during hostilities, and 6 months thereafter.

[3] The township apparently was awaiting a requested opinion from the Attorney General regarding the residency question. That opinion was not rendered, however, until after the oral examination was administered.

persons to take the oral examination. All six ultimately were certified as available for appointment, with the plaintiffs holding the fourth, fifth, and sixth eligibility spots.

Meantime, on December 30, 1980, the plaintiffs had received notice that they were being laid off due to financial difficulties being experienced by the township. Subsequent to that layoff and to the March 1981 oral examination, the township determined that it could afford to fill two permanent positions. In April 1981, the board hired the two highest scoring persons on the eligibility list, as required by statute. MCL 38.511(b); MSA 5.3361(b).[4] The plaintiffs and the Fraternal Order of Police Labor Council sued.

II

A nonjury trial was held in July 1983 in the Genesee Circuit Court. At the conclusion, the court found for the plaintiffs. The court disagreed with the defendant township that it was bound by § 11

---

[4] MCL 38.511(b); MSA 5.3361(b) provides:

(b) Every position, unless filled by reinstatement, shall be filled only in the following manner: The appointing officer shall notify the civil service commission of any vacancy in the service which he desires to fill, and shall request the certification of eligibles. The commission shall forthwith certify, from the eligible list, the name of the person who received the highest average at preceding examinations held under the provisions of this act within a period of 2 years next preceding the date of such appointment. The appointing officer shall, thereupon, with sole reference to the relative merit and fitness of the candidate, make the appointment so certified. As each subsequent vacancy occurs, precisely the same procedure shall be followed. When an appointment is made under the provisions of this section, it shall be, in the first instance for the probationary period, as provided in this act. The term "appointing officer" as used in this act shall be construed to mean the mayor or principal administrative or executive officer in any city, village or municipality.

of Act 78 to hire the first two eligible persons on the civil service list instead of recalling the plaintiffs. The court held that since the plaintiffs had served as part-time police officers without regard to the requirements of Act 78 and had served as "provisional" full-time officers for sixteen months without regard to the act's three-month limit, they had become "policemen" within the meaning of § 14 and were entitled to reinstatement under that provision.[5]

The court noted that at the time the plaintiffs were laid off, the defendant township employed some twelve part-time officers. Approximately that same number was on the job in April 1981, when the two full-time permanent appointments were made from the civil service eligibility list.

The trial court denied reconsideration, and the Court of Appeals affirmed in an unpublished per curiam opinion dated August 8, 1985. The Court noted that during the period when the plaintiffs were on provisional but full-time status, they had enjoyed all of the rights and benefits available to other full-time officers under the collective bargaining agreement. The Court pointed out that the defendant township had conceded that it retained the plaintiffs on temporary status beyond the three months allowed "for urgent reasons" under MCL 38.511(c); MSA 5.3361(c).

---

[5] MCL 38.514; MSA 5.3364 provides, in pertinent part:

    Such removals shall be accomplished by suspending in numerical order commencing with the last man appointed to the fire or police department, all recent appointees to said fire or police department until such reductions shall have been accomplished: Provided further, however, That in event the said fire or police department shall again be increased in numbers to the strength existing prior to such reductions of members the said firemen or policemen suspended last under the terms of this act shall be first reinstated before any new appointments to said fire or police department shall be made.

The Court of Appeals held that the reinstatement provisions of § 14 of Act 78 were mandatory as to the plaintiffs, who were "paid members of the township's police department." The plaintiffs were available for reinstatement under § 14, even though they had been left on temporary status beyond the three months allowed by the statute, the Court reasoned. Finally, the Court pointed to the specific layoff procedures of § 13 and to the procedural rights which a laid-off employee enjoys pursuant to § 14. Unless and until those statutory mandates are satisfied, the township is required to reinstate those persons suspended before making new appointments, the Court said.

### III

We believe that a full and fair reading of the statute at issue requires that the decisions of the lower courts be vacated and the case remanded to the trial court. The plaintiffs, as temporary employees of the defendant, were not entitled to any of the protections of Act 78, including the reinstatement protections of § 14.

The plaintiffs in the instant case at no time were employed as permanent, full-time members of the defendant's police department. Although the record indicates that during the sixteen-month period in which the plaintiffs worked full-time hours they enjoyed the same benefits as other full-time employees, there is little question but that the plaintiffs were well aware of their need to obtain permanent employment through civil service procedures.

Indeed, the plaintiffs sought the assistance of the federal courts in waiving residency requirements in order to sit for the 1980 written civil service examination. All three took the oral examination subsequent to their being laid off in December 1980. Thus, the plaintiffs clearly did not believe

themselves to be permanent employees, but rather recognized their need to qualify through examination.

The trial court found that the defendant township had not followed the provisions of Act 78 either when it first hired the plaintiffs for part-time work or when it later hired them as temporary, full-time employees. The court held, however, that by permitting the plaintiffs to remain on the job sixteen months, the township had allowed them to become "policemen" within the meaning of § 14 and, as such, they were entitled to rely on the reinstatement protections set forth in § 14.

Our reading of the circuit court's opinion indicates that the court, in effect, believed the plaintiffs to have attained de facto permanent status because they had been allowed to remain in their positions sixteen months without regard to the three-month limit for emergency, interim appointments, and because they had been treated as bona fide police officers by the defendant. As the circuit judge put it, "There was nothing about them to distinguish them in any way in the eyes of the public from any other Flint Township police officer."[6]

We believe that this reasoning ignores the clear mandates of Act 78, adopted by Flint Township residents two decades ago. Under § 11, all vacancies are to filled in accordance with civil service procedures. Although positions filled by reinstatement are handled differently than those filled by original appointment, civil service procedures, nonetheless, control. The term "reinstatement" in subsection 11(b) clearly refers to reinstatement of one originally appointed in accordance with civil service rules.

---

[6] The Court of Appeals observed in a footnote that the trial court did not hold that the plaintiffs were entitled to permanent employment status, only that the township had violated the terms of MCL 38.514; MSA 5.3364 in not reinstating two of the present plaintiffs to the police department. We disagree with this interpretation of the trial court's opinion. It is clear to us that the trial court found that the plaintiffs were de facto full-time, permanent employees.

If the lower courts are right that the plaintiffs were entitled to reinstatement under § 14, it follows that the plaintiffs also would be entitled to the layoff and discharge protections of § 13. But that section specifically provides that it does not apply to "temporary" appointments made under authority of the act. MCL 38.513; MSA 5.3363.[7] A fortiori, the provisions do not apply to temporary appointments made in violation of the act.

Thus, § 14 would aid the plaintiffs only if they were considered to be permanent, rather than temporary, employees.[8] As we said earlier, the plaintiffs clearly recognized their temporary status. We believe that it would subvert the intent and purpose of Act 78 to ignore its mandatory testing and appointment provisions.[9] The Legislature already has fashioned a remedy for violations of Act 78. MCL 38.516; MSA 5.3366.[10] We find no indication that other remedies were contemplated.

Accordingly, we remand the case to the circuit

---

[7] MCL 38.513; MSA 5.3363 provides:

No person shall be reduced in pay or position, laid off, suspended, discharged or otherwise discriminated against by any appointing officer for religious or political reasons or affiliations. In all cases of reductions, layoff, or suspension of an employee or subordinate, whether appointed for a definite term or otherwise the appointing authority shall furnish such employees or subordinate with a copy of reasons for layoff, reduction, or suspension and his reasons for the same, and give such employee or subordinate a reasonable time in which to make and file an explanation. Such order together with the explanation, if any, of the subordinate shall be filed with the commission: Provided, however, That the employee or subordinate shall be entitled to a hearing before the commission as provided in section 14. Nothing in this act contained shall limit the power of an appointing officer to suspend without pay, for purposes of discipline, an employee or subordinate for a reasonable period, not exceeding 30 days: Provided, however, That successive suspensions shall not be allowed, and after such suspension, employees shall be entitled to a hearing as provided for in this section and in section 14: And provided further, That the provisions of this act shall not apply to temporary and exceptional appointments made under the authority of this act.

[8] The trial court recognized the need to bring the plaintiffs within

court for further proceedings consistent with this opinion.

We do not retain jurisdiction.

WILLIAMS, C.J., and BRICKLEY, CAVANAGH, BOYLE, and RILEY, JJ., concurred.

LEVIN, J. I would grant leave to appeal.

ARCHER, J., states: I respectfully dissent. I agree with the analysis and result of the trial court and the analysis and result reached by the Court of Appeals.

---

the purview of § 14 if they were to be accorded relief and, accordingly, awarded them de facto full-time, permanent status. Although the trial court did not use the word "permanent," the intent is implicit in the court's discussion. For instance, the court said that undisputed trial testimony revealed that the plaintiffs were paid the same salary and afforded the same benefits as "all full-time police officers" and that the plaintiffs were expected to perform the same duties "as all other full-time police officers." Later, in discussing another provision of the act, the court found further support that the plaintiffs "had been appointed to serve as full-time police officers . . . ."

[9] Act 78, as amended, provides:

> An act to establish and provide a board of civil service commissioners in cities, villages and municipalities having full paid members in the fire and/or police departments; to provide a civil service system based upon examination and investigation as to merit, efficiency and fitness for appointment, employment and promotion of all officers and men appointed in said fire and police departments and respective cities, villages and municipalities; to regulate the transfer, reinstatement, suspension and discharge of said officers, firemen and policemen; and to repeal all acts and parts of acts inconsistent therewith.

[10] MCL 38.516; MSA 5.3366 provides:

> Sec. 16. Whoever makes an appointment to office, or selects a person for employment contrary to the provisions of this act, or wilfully refuses or neglects otherwise to comply with, or conform to, any of the provisions of this act, or violates any of such provisions, shall be deemed guilty of a misdemeanor. Misdemeanors under the provisions of this act shall be punishable by a fine of not less than $100.00, nor more than $1,000.00 or by imprisonment in state prison for a term not exceeding 2 years, or by both fine and imprisonment, in the discretion of the court.